UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MILTON BAYTOPS,

              Plaintiff,              Case No. 4:20-cv-11630
                                               District Judge Matthew F. Leitman
v.                                  Magistrate Judge Anthony P. Patti

STEVE SLOMINSKI, *et al.*,

              Defendants.

_____/

## ORDER DENYING PLAINTIFF'S MOTION FOR THE COURT TO TAKE JUDICIAL NOTICE OF PUBLIC RECORDS (ECF No. 36) AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT UNDER FED. R. CIV. P. 56(a) (ECF No. 18)

**I.     RECOMMENDATION**:  The Court should **GRANT** Defendant Scott

Wood's motion for summary judgment.  (ECF No. 18.)

**II.    REPORT**

    **A.    Background**

        **1.    Factual Background**

On June 8, 2020, Plaintiff Milton Baytops, a state prisoner proceeding

without the assistance of counsel, filed a complaint in the United States District

Court for the Western District of Michigan against: Alpena County Sheriff's

Department Detectives Steve Slominski and Lincoln Suszek[1]; Michigan State

Police Detective Sergeant Scott Wood; John Doe members of the Alpena County

Huron Undercover Narcotics Team (HUNT); alleged confidential informant (CI)

Wendy Macleod; and citizens Chastity Wolf, Aaron Bisonnette, and Kayla

Woodham, which was transferred to this Court on June 22, 2020.  (ECF Nos. 1 &

3.)  As summarized by this Court in its August 5, 2020 order:

> This is a *pro se* civil rights case brought pursuant to 42 U.S.C. §
> 1983.  Michigan prisoner Milton Baytops alleges that his
> constitutional rights were violated when he was subjected to excessive
> force by police during a raid at a residence in Alpena, Michigan in
> March 2019.  (*See Compl.*, ECF No. 1, PageID.5, 7.)  He also alleges
> that, at trial, there was no DNA or fingerprints on the money or the
> drugs found during the raid.  (*See id.*, PageID.8.)  State records reveal
> that Baytops was convicted of two counts of delivery/manufacture of
> less than 50 grams of narcotics/cocaine and one count of conspiracy to
> do the same following a jury trial in the Alpena County Circuit Court.
> The state court then sentenced him to concurrent terms of 5 to 20
> years imprisonment on those convictions on July 30, 2019.
>
> * * *
>
> He has sued the Defendants in both their official and personal
> capacities.  (*See id.*)  He seeks injunctive relief, monetary damages,
> and any other appropriate relief.

(ECF No. 8, PageID.20-21.)

In that same order, the Court dismissed Plaintiff's claims against Defendants

Macleod, Wolf, Bisonnette, and Woodham because they are not state actors and,

---

[1] The Court will use the spelling of Defendant Suszek's name as it appears in his
answer (ECF No. 19) as opposed to on the docket.

thus, not subject to suit under 42 U.S.C. § 1983.  (ECF No. 8, PageID.24.)  And to the extent Plaintiff challenged the validity of his prosecution and state criminal proceedings, the Court dismissed those claims, citing *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).  (ECF No. 8, PageID.23-24.)  Further, on April 21, 2021, the Court denied Plaintiff's motion for leave to file an amended complaint (ECF No. 27), by which he sought to correct errors of fact and the omission of claims, and to add defendants to the lawsuit.  (ECF No. 35.)  Thus, the only remaining claim is that for excessive force against Defendants Slominski, Suszek, Wood, and the John Doe HUNT members.  (ECF No. 8, PageID.25.)[2]

More specifically, Plaintiff alleges that his constitutional rights were violated when: (1) unknown HUNT members unlawfully beat him inside of the apartment during the raid, and left him to sit on the porch in the cold wearing no socks, shoes, or shirt, as evidenced by bodycam footage; (2) Defendant Slominski, *et al.*, told the HUNT members that he could not be left outside in the cold; (3) the HUNT members who conducted the raid were unsupervised; and (4) Defendant Suszek, *et al.*, sat and looked on as he bled outside in the cold.  (ECF No. 1, PageID.5-8, ¶¶ 1-5, 9, 11-12, 14.)

## 2.    Summary Judgment Motion

---

[2] It does not appear, from a review of the docket, that the John Doe Defendants have yet been specifically identified by Plaintiff or served.

On October 19, 2020, Defendant Wood filed the instant summary judgment motion pursuant to Fed. R. Civ. P. 56(a), arguing that: (1) on the basis of the allegations in the complaint, he did not use excessive force in violation of Plaintiff's Fourth or Fourteenth Amendment rights because he did not arrive on the scene until after Plaintiff had been placed in a patrol car; (2) he is, thus, entitled to qualified immunity from Plaintiff's excessive force claim; and (3) even if he had been involved in keeping Plaintiff outside on the porch, such conduct would not amount to excessive force. (ECF No. 18, PageID.61-70.) In so doing, he clarifies that he was a part of the Michigan State Police (MSP) team that investigated and obtained the search warrant and called in the MSP Emergency Support Team (EST) to execute the warrant. (ECF No. 18, PageID.57-58.) Further, Defendant Wood, in his affidavit attached to the instant motion, states:

> I am not a member of the EST and I did not participate in the search warrant entry which resulted in the contact and/or arrest of the Plaintiff. Further, [sic] I nor any member of HUNT, entered the apartment prior to the EST completing their entry, securing the occupants of the apartment, and advising the apartment was safe to enter. At that time, I and HUNT members entered the apartment to conduct an evidentiary search of the residence and interview the remaining occupants.

(ECF No. 18-1, PageID.76, ¶ 11.)

Judge Leitman referred the case to me for all pretrial matters on October 21, 2020. (ECF No. 22.)

**B.      Standard**

4

Under Fed. R. Civ. P. 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The nonmoving party "must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*,

432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must . . . do more than simply show that there is some metaphysical doubt as to the material facts[.] . . . [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted). "Such evidence submitted in opposition to a motion for summary judgment must be admissible." *Alexander*, 576 F.3d at 558 (internal quotation marks and citations omitted). In other words, summary judgment is appropriate when the motion "is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case[.] . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The fact that Plaintiff is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema, N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.' " *Tucker v. Union of Needletrades, Indus., & Textile Emp.*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)). The Sixth Circuit has made clear that, when opposing summary

judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because "he failed to present any evidence to defeat the government's motion").

## C. Discussion

### 1. Defendant Wood's motion for summary judgment is unopposed

Defendant Wood filed his motion for summary judgment on October 19, 2020. (ECF No. 18.) "A respondent opposing a motion must file a response, including a brief and supporting documents then available." E.D. Mich. Local Rule 7.1(c)(1). "A response to a dispositive motion must be filed within 21 days after service of the motion." E.D. Mich. LR 7.1(e)(1)(B). Therefore, Plaintiff's response would ordinarily have been due on or about Monday, November 9, 2020. Fed. R. Civ. P. 6(a) and (d).

On October 23, 2020, I entered an order which required Plaintiff to file a response on or before November 23, 2020. (ECF No. 24.) The Court's order regarding the briefing schedule was not returned as undeliverable, so it is presumed that Plaintiff received it. To date, no response has been filed. Instead, Plaintiff has filed what have been docketed as an affidavit of truth (ECF No. 25), exhibits (ECF

No. 32), and a motion for the Court to take judicial notice of public records (ECF No. 36), none of which the Court need consider a proper response to the instant motion.[3]

Nonetheless, "a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded." *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991). "The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged that burden." *Id*.

### 2. The Court should grant summary judgment on Plaintiff's excessive force claim against Defendant Wood

#### a. Excessive force

Again, Plaintiff claims excessive force, in violation of his constitutional rights pursuant to 42 U.S.C. § 1983, alleging that he was beaten inside the apartment during the raid, and left to sit on the porch in the cold before being placed in a patrol car. (ECF No. 1, PageID.5-8, ¶¶ 1-5, 9, 11-12, 14.) "Excessive force claims . . . can be raised under the Fourth, Eighth, and Fourteenth Amendments. Which amendment should be applied depends on the status of the plaintiff at the time of the incident; that is, whether the plaintiff was a free citizen, convicted prisoner, or fit in some gray area between the two." *Burgess v. Fischer*,

---

[3] The only of these filed prior or even close to November 23, 2020, the due date of Plaintiff's response, was the affidavit of truth. (ECF No. 25.)

735 F.3d 462, 472 (6th Cir. 2013). "Where . . . the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment . . . ." *Graham v. Connor*, 490 U.S. 386, 394 (1989). And "the Fourth Amendment extends 'at least through the completion of the booking procedure, which is typically handled by jailers.'" *Burgess*, 735 F.3d at 474 (citation omitted). As Plaintiff's excessive force allegations are limited to the raid and his arrest, the Court should review his claim under the Fourth Amendment.[4]

According to the Sixth Circuit:

> Under the Fourth Amendment, we apply an objective reasonableness test, looking to the reasonableness of the force in light of the totality of the circumstances confronting the intent or motivation of the defendants. *Dunigan v. Noble*, 309 F.3d 486, 493 (6th Cir. 2004); *see also Graham*, 490 U.S. at 396-97, 109 S.Ct. 1865. We balance "the nature and quality of the intrusion on [a Plaintiff's] Fourth Amendment interests against the countervailing governmental interests at stake." *Ciminillo v. Streicher*, 434 F.3d 461, 466-67 (6th Cir. 2006). In so doing, three factors guide our analysis: "'[(1)] the severity of the crime at issue, [(2)] whether the suspect poses an immediate threat to the safety of the officers or others, and [(3)] whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Martin v. City of Broadview Heights*, 712 F.3d 951, 958 (6th Cir. 2013) (quoting *Graham*, 490 U.S. at 396, 109 S.Ct. 1865). These factors are assessed from the perspective of a reasonable officer on the scene making a split-second judgment under tense, uncertain, and rapidly evolving circumstances without the advantage of 20/20 hindsight. *Graham*, 490 U.S. at 496, 109 S.Ct. 1865.

---

[4] Defendant Wood addresses Plaintiff's claim under the Fourth and Fourteenth Amendments in his summary judgment motion, but as explained in detail below, the distinction should not affect the Court's ultimate disposition.

*Burgess*, 735 F.3d at 472-73.

> **b.** **Plaintiff has failed to meet his burden of demonstrating a genuine issue of material fact with regard to Defendant Wood's personal involvement in any of the alleged excessive force**

Defendant Wood first asserts entitlement to summary judgment on Plaintiff's claim against him because he did not arrive on the scene until after any of the alleged excessive force occurred. (ECF No. 18, PageID.61-70.) For the reasons that follow, I agree.

"'Section 1983 provides a cause of action against any person who, under color of state law, deprives an individual of any right, privilege, or immunity secured by the Constitution and federal law.'" *Regets v. City of Plymouth*, 568 F. App'x 380, 386 (6th Cir. 2014) (quoting *McKnight v. Rees*, 88 F.3d 417, 419 (6th Cir. 1996)). However, § 1983 does not "permit individuals to sue state actors in the abstract; it requires them to connect alleged constitutional violations of the individuals' rights to state conduct." *Thomas v. Nationwide Children's Hosp.*, 882 F.3d 608, 614 (6th Cir. 2018). In other words, a plaintiff must demonstrate that the individual defendant was personally involved in the activity forming the basis of the complaint. *Rizzo v. Goode*, 423 U.S. 362, 372 (1976); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). *See also Robertson v. Lucas*, 753 F.3d 606, 618 (6th Cir. 2014) ("The proper defendants in an action under § 1983 or *Bivens* are the

law enforcement officers who were personally involved in the incident alleged to have resulted in a violation of the plaintiff's civil rights.").  In the excessive force context specifically, a plaintiff must prove that the officer "'(1) actively participated in the use of excessive force, (2) supervised the officer who used excessive force, or (3) owed the victim a duty of protection against the use of excessive force.'"  *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)).

Even viewing the evidence presented in a light most favorable to Plaintiff, he has failed to meet his burden of demonstrating a genuine issue of material fact with regard to Defendant Wood's liability for any alleged excessive force.  In support of his summary judgment motion, Defendant Wood has attached an affidavit in which he denies any personal physical involvement in the apartment raid or the placement of Plaintiff on the porch, stating:

> I am not a member of the EST and I did not participate in the search warrant entry which resulted in the contact and/or arrest of the Plaintiff.  Further, [sic][5] I nor any member of HUNT, entered the apartment prior to the EST completing their entry, securing the occupants of the apartment, and advising the apartment was safe to enter.  At that time, I and HUNT members entered the apartment to conduct an evidentiary search of the residence and interview the remaining occupants.

---

[5] It is obvious from everything that immediately follows within the affidavit that the word *neither* was inadvertently left out of this sentence, due to a scrivener's error. But the remainder of the affidavit provides clear evidence, and renders this error inconsequential.

> The first time I observed the Plaintiff was from across the road, sitting in my undercover vehicle, when the EST brought Plaintiff out of the apartment, handcuffed, and walked him to a patrol car. I then made my way across the road to the scene.
>
> When I and members of HUNT arrived at the scene to conduct an evidentiary search of the apartment, Plaintiff had already been secured in a patrol car where Plaintiff remained until Plaintiff was transported to the Alpena County Jail by a uniformed Michigan State Police Trooper.
>
> At no time during the execution of this search warrant did I or any member of HUNT have any contact physically or verbally with Plaintiff, nor did I or any member of HUNT use any physical force against Plaintiff.

(Exhibit A, ECF No. 18-1, PageID.76-77, ¶¶ 11-14.) Further, the incident reports he attached corroborate these statements. According to the original incident report, Defendant Wood conducted surveillance during the controlled buy on March 4, 2019, the day before execution of the search warrant (ECF No. 18-1, PageID.83), but he was not listed in the EST incident report as one of the members who executed the search warrant (ECF No. 18-1, PageID.110).

And Plaintiff has neither formally responded to the instant motion, nor presented evidence in his other three filings mentioned above to contradict the record established by Defendant Wood and demonstrate a genuine issue of material fact as to whether Defendant Wood actively participated in the use of excessive force. In fact, in the sworn filing Plaintiff has docketed as an affidavit of truth, which appears to contain statements in support of his complaint, he repeatedly

admits that Defendant Wood did not physically arrest him, and was only present when he was already in the patrol car.  (ECF No. 25, PageID.145-148, ¶¶ 2-5, 9-12.)  And he makes no specific, substantive allegations against Defendant Wood in his complaint.  Thus, Plaintiff has failed to establish a genuine issue with regard to Defendant Wood's active participation in the alleged use of excessive force.

The same is true to the extent, if any, Plaintiff alleges that Defendant Wood owed him a duty of protection against the use of excessive force.  "'As a general rule, mere presence at the scene of a search, without a showing of direct responsibility for the action, will not subject an officer to liability.'"  *Burley v. Gagacki*, 729 F.3d 610, 620 (6th Cir. 2013) (quoting *Ghandi v. Police Dep't of Detroit*, 747 F.2d 338, 352 (6th Cir. 1984).  However, a "'police officer who *fails* to act to prevent the use of excessive force may still be held liable where (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring.'"  *Burley*, 729 F.3d at 620 (internal quotations and citations omitted).

In his complaint, Plaintiff alleges that Defendant *Suszek*, "et al.," looked on as he was bleeding and left to sit in the cold.  (ECF No. 1, PageID.5, ¶ 4.)  Although in viewing the DVD dashcam video attached to and referenced in the instant motion it is unclear to me exactly when Defendant Wood arrives on the

scene, Defendant Wood states in his affidavit that although he made his way to the scene of the search upon observing Plaintiff from across the road in his undercover vehicle when EST brought Plaintiff out of the apartment and to a patrol car (ECF No. 18-1, PageID.76, ¶ 12), he did not arrive on the scene until Plaintiff had already been secured in the patrol car (ECF No. 18-1, PageID.77, ¶¶ 13, 15).[6] From this evidence, the Court could conclude that Defendant Wood satisfied his initial burden of proving the lack of a genuine factual dispute with regard to whether he had the opportunity and the means to prevent the alleged harm from occurring. *See Stansberry*, 651 F.3d at 486. And Plaintiff presents no evidence to the contrary. Indeed, in his affidavit of truth, Plaintiff states only that Defendant Wood supervised and/or initiated the raid (ECF No. 25, PageID.144-148, ¶¶ 2-5, 9-12), not that he observed or had reason to know of the excessive force, or the opportunity to prevent its occurrence.

Finally, Plaintiff has failed to meet his burden of establishing a genuine issue of material fact with respect to Defendant Wood's liability under § 1983 based on

---

[6] Moreover, as Defendant Wood asserts in his summary judgment motion (ECF No. 18, PageID.66), the dashcam video shows Plaintiff on the porch, without a shirt on, for approximately 70 seconds before officers walk him to a patrol car (Exhibit B, ECF No. 26, 7:10-8:20), which does not seem unreasonable in light of the totality of the circumstances. *Burgess*, 735 F.3d at 472-73. The raid itself inside the residence is not a part of the video.

supervision of any officer who allegedly used excessive force.  In fact, he does not even *plead* supervisory liability, merely alleging that:

> *Lincoln Suszok*, et al., as detectives was also waiting outside was just looking on as I was bleeding from being beating from the hands of the Alpena County Hunt-team members had laid hands on me and left me to sit on porch in cold.  (EMS) was called, *all agents* had (body cams) on and their agents was unsupervised when [entering] the apartment home they had prior plainted [sic] a 'CI' whom was visiting the home who also was a user and unsupervised agent.

(ECF No. 1, PageID.5, ¶ 4 (emphases added).)  However, "'Section 1983 liability will not be imposed solely upon the basis of *respondeat superior*.'"  *Taylor v. Mich. Dep't of Corrections*, 69 F.3d 76, 81 (6th Cir. 1995) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984), *cert. denied*, 469 U.S. 845 (1984)).  "In order to establish personal liability for a failure to train and supervise '[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.  *At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate*.'"  *Coley v. Lucas Cty., Ohio*, 799 F.3d 530, 542 (6th Cir. 2015) (quoting *Taylor*, 69 F.3d at 81 (emphasis in original)).

Furthermore, pleading the fault of the various law enforcement agents *en masse* ("all agents" and "et al.") is problematic for other reasons.  As the Sixth Circuit recently noted, the Supreme Court has instructed that "public officials be

held accountable for their own actions, but not the actions of others." *Jones v. City of Elyria, Ohio*, 947 F.3d 905, 913 (6th Cir. 2020) (citing *Ghandi*, 747 F.2d at 352). Addressing qualified immunity as to three defendant police officers, the Sixth Circuit explained: "[W]e do not lump together each of the relevant government actors. Rather, we assess each actor's liability on an individual basis." *Jones*, 947 F.3d at 913. *See also Kellom v. Quinn*, 381 F.Supp.3d 800, 817 (E.D. Mich. 2019) (Cox, J.) (in addressing qualified immunity as to an ICE Agent and two Detroit Police Department Officers, "[e]ach defendant's liability must be assessed individually based on his [or her] own actions") (quoting *Binay*, 601 F.3d at 650).

In his supporting affidavit, Defendant Wood attests that he did not enter the apartment or have any physical or verbal contact with Plaintiff during the execution of the search warrant, did not arrive on the scene until after Plaintiff had been placed in a patrol car, and "was not involved in the decision to place Plaintiff on the porch after he was brought out of the house" (ECF No. 18-1, PageID.76-77, ¶¶ 11, 13-15), from which one could infer that he did not, implicitly or otherwise, authorize, approve of, or knowingly acquiesce in the alleged excessive force. And Plaintiff's allegation in the complaint that Suszek, *et al.*, looked on as he sat bleeding outside in the cold (ECF No. 1, PageID.5, ¶ 4), does not satisfy his burden of establishing a genuine issue of material fact otherwise, especially when

considered in combination with his admission that Defendant Wood did not physically arrest him, and was only present when he was already in the patrol car (ECF No. 25, PageID.145-148, ¶¶ 2-5, 9-12).

Accordingly, the Court should find that Plaintiff has failed to demonstrate a genuine issue of material fact regarding Defendant Wood's direct participation in, supervision of, or failure to protect against, *Binay*, 601 F.3d at 650, any alleged excessive force, and grant him summary judgment on that claim.

### c.    Qualified immunity

Defendant Wood also asserts that, as he was not personally involved in arresting Plaintiff or placing Plaintiff on the front porch, he is entitled to qualified immunity from Plaintiff's excessive force claim and, thus, summary judgment. (ECF No. 18, PageID.67-70.)  Section 1983 claims are subject to the affirmative defense of qualified immunity.  *Regets*, 568 F. App'x at 386.  The doctrine of qualified immunity shields government officials performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Stoudemire v. Mich. Dep't of Corrections*, 705 F.3d 560, 567 (6th Cir. 2013) (quotation marks and citations omitted).  "In resolving a government official's qualified immunity claims, we look to whether (1) the facts that the plaintiff has alleged or shown establish the violation of a constitutional

right, and (2) the right at issue was 'clearly established' at the time of the alleged misconduct." *Id*. "A defendant bears the initial burden of putting forth facts that suggest that he was acting within the scope of his discretionary authority." *Id*. at 568. But ultimately, "the burden of proof is on the plaintiff to show that the defendants are not entitled to qualified immunity." *Id*. (quotation marks and citation omitted).

As Plaintiff has failed to demonstrate a genuine issue of material fact regarding whether Defendant Wood committed any constitutional harm against him, described in detail above, the Court should conclude that Defendant Wood is entitled to qualified immunity. Plaintiff has not demonstrated the "violation of a constitutional right" by this particular officer. *Id*. at 567.

### 3. Plaintiff's motion for the Court to take judicial notice of public records (ECF No. 36)

In ECF No. 36, Plaintiff requests that the Court accord him liberal treatment as a *pro se* plaintiff, take judicial notice of police records, public newspaper references, and official government statements, and provide him the opportunity to prove his claims (ECF No. 36, PageID.384-385), attaching to his motion the Michigan State Police policy regarding body cameras, a portion of a court transcript with redactions, and a Michigan State Police incident report with redactions (ECF No. 36, PageID.387-404). As the Court considers this an improper filing of discovery material under Fed. R. Civ. P. 5(d) and E.D. Mich. LR

26.2 ("[a] party or other person may not file discovery material" except in limited circumstances) and the information is not clearly linked to a pleading, motion, brief or response, the motion is **DENIED**. Plaintiff is advised that any further attempts to file discovery requests will be stricken from the Court's docket. Records may not simply be plowed into the Court's docket as freestanding exhibits; they must normally be attached to a pleading, motion or brief, in support of the same, and explain how they support it. Fed. R. Civ. P. 10(c); E.D. Mich. LR 5.1(d). It is not left for the Court to figure this out. In any case, Plaintiff does not enlighten the Court as to how these items would establish a material fact question as to Defendant Wood. To the extent that Plaintiff wants to be assured that the Court considered bodycam footage and police reports, he can rest assured that it did, as each was cited within and attached to Defendant Wood's summary judgment motion and discussed above. Fed. R. Civ. P. 56(c)(1)(A). *See also* Fed. R. Civ. P. 56(c)(3) ("The court need consider *only* the cited materials, but it *may* consider other materials in the record.") (emphasis added).

### D. Conclusion

The Court should **GRANT** Defendant Wood's motion for summary judgment. (ECF No. 18.)

In addition, Plaintiff's motion for the Court to take judicial notice of public records (ECF No. 36) is **DENIED**.

## III.    PROCEDURE ON OBJECTIONS

### A.    Report and Recommendation

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

*Hum. Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some issues

but fail to raise others with specificity will not preserve all the objections a party

might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum.*

*Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Tchr's, Loc.*

*231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any

objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc*.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc*.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

**B.     Order**

The attention of the parties is drawn to Fed. R. Civ. P. 72(a), which provides a period of fourteen (14) days after being served with a copy of this order within which to file objections for consideration by the district judge under 28 U.S.C. § 636(b)(1).

**IT IS SO ORDERED.**

Dated:  May 26, 2021

_____
Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE